STATE OF NEW YORK
<u>SUPREME COURT</u>        SARATOGA COUNTY

MARILYN RIVERS

                Plaintiff,                <u>SUMMONS</u>
                                                      Index No.   1:23-cv-818 (BKS/DJS)

    -against-

CITY OF SARATOGA SPRINGS, NEW YORK;
MAYOR RON KIM, individually and in his official
capacity; and COMMISSIONER JAMES MONTAGNINO,
individually and in his official capacity,

                Defendants.

**SUMMONS IN A CIVIL ACTION**

To the above-named defendants:

    YOU ARE HEREBY SUMMONED to answer the complaint in this action and serve a copy of your answer, or if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiff's attorney within in twenty (20) days after the service of this summons, exclusive the day of service, or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York; and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

    Venue is designated in the County of Saratoga pursuant to CPLR §503(a) because the Defendant City of Saratoga Springs is located within Saratoga County and because a substantial part of the events giving rise to this action occurred in the County of Saratoga.

Dated: May 8, 2023

                                                       **CAPEZZA HILL, LLP**

                                                       **BENJAMIN W. HILL, ESQ.**

*Attorneys for Plaintiff*
30 South Pearl Street, P-110
Albany, NY 12207
518-478-6065
Ben@capezzahill.com

2

STATE OF NEW YORK
<u>SUPREME COURT</u>          SARATOGA COUNTY

MARILYN RIVERS

                Plaintiff,                    **COMPLAINT AND**
                                               **DEMAND FOR JURY TRIAL**
       -against-

CITY OF SARATOGA SPRINGS, NEW YORK;
MAYOR RON KIM, individually and in his official
capacity; and COMMISSIONER JAMES MONTAGNINO,
individually and in his official capacity,

                Defendants.
_____

       Plaintiff, Marilyn Rivers, by and through her attorneys, Capezza Hill, LLP, hereby alleges as her Complaint the following:

**PRELIMINARY STATEMENT**

       1.      This is a claim for discriminatory hostile work environment, retaliation, and defamation perpetrated against Plaintiff Marilyn Rivers, a career civil servant whose stellar reputation and good name were repeatedly maligned by Defendants, who saw fit to play political football with her reputation and career in the furtherance of their small political aims and self-aggrandizement. Because of Defendants' unlawful, discriminatory, and hostile conduct including patently false public statements questioning Marilyn Rivers' integrity and accusing her of illegal and unlawful conduct, she was forced to prematurely retire from a position she held without blemish for over twenty (20) years – a position in which she thrived, and which benefitted the City of Saratoga Springs.

**PARTIES**

       2.      That Plaintiff Marilyn Rivers is an individual residing in the Town of Queensbury, County of Warren, State of New York. Marilyn Rivers is over forty years of age.

1

3. That at all times relevant herein, defendant City of Saratoga Springs, New York (hereinafter "City"), is a municipal corporation organized and existing pursuant to the laws of the State of New York.

4. That at all times relevant herein, defendant Ron Kim is the duly elected Mayor in the City of Saratoga Springs and is a resident of the County of Saratoga, State of New York.

5. That at all times relevant herein, defendant James Montagnino is the duly elected Commissioner of Public Safety for the City of Saratoga Springs and is a resident of the County of Saratoga, State of New York.

6. Both Defendants Kim and Montagnino serve as City Council Members and regularly participate in public City Council meetings.

## JURISDICTION AND VENUE

7. This action is brought under the New York State Human Rights Law, New York State common law, and under 42 U.S.C. § 1983.

8. This Court has jurisdiction over Plaintiff's claims because the Defendant City of Saratoga Springs is located within the County of Saratoga, State of New York.

9. This Court also has jurisdiction because the unlawful conduct complained of herein occurred in the County of Saratoga, State of new York.

10. Venue is proper in this court pursuant to Civil Practice Law and Rules ("CPLR") § 503 because one or more of the Defendants resides in Saratoga County.

11. Venue is also proper because many of the events giving rise to this action occurred in the County of Saratoga.

12. A Notice of Claim pursuant to the New York State General Municipal Law was served on the City of Saratoga Springs Corporate Counsel on September 27, 2022.

2

13. Defendant City did not exercise its right to a Gen. Mun. L. 50-h hearing.

## FACTUAL ALLEGATIONS

14. Plaintiff is a public servant who sat for a public service exam and was hired by the City on or about April 7, 2003.

15. Since that time, she has served as the City's Risk and Safety Manager and the Director of Risk and Safety pursuant to the duties bestowed upon her by the Civil Service Commission of the City.

16. Defendant Ron Kim was elected Mayor of the City on or about November 3, 2021, and took office on or about January 1, 2022.

17. The City of Saratoga Springs is a commission form of government.

18. In her role as Director of Risk and Safety, Mrs. Rivers reported to the Commissioner of Accounts. Dillon Moran was the newly elected Commissioner of Accounts as of January 1, 2022.

19. The Risk and Safety position and functionality was placed into the Department of Accounts in 2002 by a City Council action.

20. On January 6, 2022, Plaintiff was called into a meeting with Defendant Mayor Ron Kim, Deputy Mayor Angela Rella and Commissioner Dillon Moran to discuss the City's contracts with legal counsel, the City's insurance policies and its legal counsel, and its use and management of the City's insurance program legal counsel.

21. At the meeting, Defendant Mayor Ron Kim stated that the management of all of the City's insurance litigation, which had historically and previously been Mrs. Rivers' responsibility since her hire in 2003, would be transitioned to the City Attorney and Mayor's Office.

22. In this meeting and others, Defendant Mayor Kim spoke dismissively to Mrs. Rivers, often questioning her specialized knowledge.

23. Upon information and belief, Defendant Mayor Kim wanted more control over the City's litigation so that he could exert influence over politically charged cases, including the wrongful death case of the Estate of Darryl Mount versus the City of Saratoga Springs.

24. Upon information and belief, Defendant Mayor Kim had meetings and communications with a private attorney representing the Estate of Darryl Mount, who was seeking a favorable settlement with the City.

25. Mrs. Rivers did not know about these meetings, nor, upon information and belief, did the City's insurance carrier or assigned insurance defense legal counsel.

26. On January 27, 2022 Commissioner Moran requested Mrs. Rivers provide copies of the City's insurance policies to Defendant Commissioner of Public Safety James Montagnino and his Deputy Commissioner Jason Tetu. On that same date, Deputy Mayor Angela Rella requested a "copy of the City's malpractice insurance that would cover the Mayor's City Attorney appointment." Mrs. Rivers provided copies of the City's insurance program to both parties and other members of the City Council per the permission she received from Commissioner Moran.

27. On March 8, 2022, Mrs. Rivers had a private meeting with City Attorney Tony Izzo at which she expressed her concern that Commissioner Moran had directly contacted the City's insurance carrier regarding litigation involving a former City employee, Timothy Wales.

28. Mrs. Rivers informed Mr. Izzo that Commissioner Moran claimed he had testimony that would materially affect the case.

29. Mrs. Rivers expressed the concern that Commissioner Moran should not participate in the discussions as a potential material witness and expressed fear of retaliation and charges of

4

insubordination if she spoke of the matter to Commissioner Moran.

30. City Attorney Izzo reminded Mrs. Rivers that she reported to Commissioner Moran and that she must follow his directives.

31. On March 21, 2022, City Attorney Izzo requested a "quick" meeting with Mrs. Rivers at which he informed Mrs. Rivers that, at the behest of Mayor Kim, he was investigating her for her alleged improper attendance at depositions as a representative of the City in various prior cases against the City.

32. Izzo said the Mayor, who is a lawyer, was accusing Mrs. Rivers of "acting as a lawyer" during the proceedings in question.

33. Upon information and belief, Defendant Mayor Kim made this false accusation to many individuals within and without the City government.

34. Mrs. Rivers has never "acted as an attorney" and tried to explain her responsibilities and practices as the Director of Risk and Safety and as the City's Authorized Insurance Representative working with insurance carrier claims managers and assigned legal counsel throughout her nineteen (19) year tenure per the responsibilities assigned to her by the previous Commissioners of Accounts and City Councils and her professional credentials.

35. When Mrs. Rivers reached out to Commissioner Moran during this meeting, Commissioner Moran directed her to cooperate with Mr. Izzo.

36. On May 10, 2022, Commissioner Moran informed Plaintiff that Defendant Mayor Kim was intending to set her up to be fired. Mrs. Rivers expressed concern that she was being targeted. Commissioner Moran sent an email to Mrs. Rivers for a spreadsheet of all "Pending, Ongoing Legal Matters" that "delineates all of the Legal matters currently underway, or anticipated to be underway" which she provided as requested to Commissioner Moran, Mayor Kim, Deputy

5

Mayor Angela Rella, Deputy Commissioner Stacy Connors and City Attorney Tony Izzo.

37. On May 16, 2022, Mrs. Rivers became aware of a City Council Resolution offered by Defendant Mayor Ron Kim on the City Council Pre-agenda titled "Discussion and Vote: Resolution – Title 8 (Legal Matters)."

38. However, on May 16, 2022, no copy of the Resolution in question was attached to the agenda. Commissioner Moran later informed Mrs. Rivers that "the City Council members were out to get her."

39. On May 17, 2022, Mayor Kim once again listed a City Agenda Item titled "Discussion and Vote: Resolution – Title 8 (Legal Matters)."

40. The Resolution resolved that the City Attorney shall "…Consistent with the preservation of the attorney/client privilege, coordinate all consultations with outside legal counsel retained by the City, or assigned on behalf of the City by an entity providing insurance coverage to the City."

41. The proposed Resolution identified Mrs. Rivers as the City's Risk and Safety Manager and not her current title, precipitating Mrs. Rivers' anxiety that she was either being demoted or fired. At no time before, during or after the City Council Meeting in question was Mrs. Rivers approached to discuss or explain what the Resolution meant for her employment. The only communication she received was a verbal comment from Commissioner Moran that "the City Council members were out to get her."

42. This resolution effectively sought to remove and materially change the duties assigned to Mrs. Rivers in her Civil Service job description and place them under the power and control of Defendant Mayor Kim through his appointed City Attorney.

43. In a May 18, 2022 email to the City's insurance agent Matt D'Abate at Amsure

6

Insurance Company, Defendant Mayor Kim accused Mrs. Rivers of illegally practicing law as a non-lawyer without supervision – a criminal act -- and asserted that the City needed to "protect" itself from Mrs. Rivers.

44. Upon information and belief, Defendant Mayor Kim made this false accusation against Mrs. Rivers to many others inside and outside of City government.

45. Mr. D'Abate and Travelers insurance counsel Norah Murphy provided emails in response to the accusation explaining Mrs. Rivers role as the City's Authorized Insurance Representative and an explanation of her credentials for her role.

46. On May 24, 2022, a special City Council meeting was held to continue the proceedings of the May 17, 2022 City Council Meeting that was interrupted by a fire.

47. The Mayor's Agenda Item No. 12: "Discussion and Vote: Resolution – Title 8 (Legal Matters)" was once again presented for Discussion and Vote.

48. Commissioner Moran informed Mrs. Rivers that there were serious attempts being made by Defendant Mayor Kim and Defendant Commissioner Montagnino to fire her. However, the agenda item was voted down.

49. On or about May 24, 2022, Plaintiff Marilyn Rivers engaged in protected conduct when she filed a hostile work environment claim with Defendant's Human Resources Office, stating that Defendant Mayor Ron Kim and his staff created a discriminatory and hostile work environment through various efforts to undermine her authority and integrity, including through falsely accusing Mrs. Rivers of improperly "acting as an attorney," questioning her professionalism, and taking away her job duties and responsibilities.

50. The hostile work environment Defendants created was motivated in substantial part by Mrs. Rivers sex and age.

7

51. On the June 6, 2022 City Council Pre-agenda, Defendant Mayor Kim introduced a resolution stating that "[t]he position of Risk and Safety Manager shall report to, and work under the general supervision and administrative direction of, the City Attorney, effective July 1, 2022."

52. Commissioner Moran continued to inform Mrs. Rivers that Defendant Mayor Kim was intent on firing her and/or defunding her so he could control the City's litigation and influence the outcomes of cases with political import.

53. Commissioner Moran demanded that Mrs. Rivers present herself to the City Council Meeting to defend herself and to "gather the troops" to come to defend her for the discussion.

54. On June 7, 2022, Mayor Kim listed the same agenda item for the June 7, 2022 City Council Meeting Agenda titled "Discussion and Vote: Resolution: Risk & Safety in City Attorney's Office."

55. At the meeting, Mayor Kim made allegations against Mrs. Rivers regarding the Wales case – specifically that Mrs. Rivers "attempted to resolve a legal matter without involving the city attorney's office, any member of the city council, or specific department that was the subject of the litigation." These statements were made in support of his motion to move her position under the supervision of the City Attorney which since 2022 has been part-time. Mrs. Rivers was given two (2) minutes to defend her actions and the entirety of the Risk and Safety Program practices for the past nineteen (19) years. The vote failed.

56. Defendant Kim made the aforementioned defamatory statements even though a lawyer for the City's insurance company, Travelers, clearly explained in an email Kim received prior to the June 7, 2022 meeting that Mrs. Rivers never engaged in the practice of law, that she served an essential role in handling claims against the City, and that pursuant to the City's

insurance policy with Travelers, the authority to settle the claim rests with the insurance company, not the City as its insured.

57. On or about July 18, 2022 Mrs. Rivers prepared a voucher for the $25,000 deductible owed to Travelers for invoice number 613195 pertaining to the Wales settlement in accordance with the City's Finance and Purchasing Policies and discussed the matter with Deputy Commissioner Connors as was the standard protocol.

58. Deputy Commissioner Connors verbally approved the payment and Mrs. Rivers uploaded it into the City's voucher processing system for payment following the City's Standard practice. The voucher was reviewed, approved, and processed by City purchasing and finance staff and sent onward to the City Council Agenda for City Council approval on August 2, 2022. It was placed within the Consent Agenda as part of the regular warrant as was standard and historic protocol – a protocol controlled by the City's Finance Department.

59. At no time between Mrs. Rivers' conversation with Deputy Commissioner Connors on July 18, 2022 and the City Council Meeting of August 2, 2022 was any question asked or concern expressed about the invoice payment with Mrs. Rivers.

60. On or about July 19, 2022, Mayor Kim attempted to prevent Mrs. Rivers from performing yearly workplace violence, discrimination, and other trainings for City Hall employees. Mrs. Rivers historically conducted these trainings in past years and they are included in her job description.

61. Through his human resources administrator, Mayor Kim cancelled Mrs. Rivers' scheduled training in a retaliatory attempt to wrest this responsibility from her office and bring it under his control.

62. At the August 2, 2022 City Council meeting, Mayor Kim again engaged in

9

retaliatory conduct when he accused Mrs. Rivers of purposely hiding from the City Council a $25,000 deductible payment related to the settlement of the Wales case.

63. Mayor Kim stated Mrs. Rivers did not inform his office that a $25,000 deductible was owed to the City's insurance carrier, Travelers, and that any such agreement to settle the case should have been presented to and approved by the Council and blatantly suggested that because Mrs. Rivers did not properly present the approved settlement to the Council for approval, she had deceptively hidden it from the Council and the public. Specifically, Mayor Kim stated that Mrs. Rivers deceptively "tried to hide" the settlement from the Council.

64. Mayor Kim's defamatory statements against Mrs. Rivers were false and he knew they were false at the time he made them.

65. At the same meeting, Commissioner Minita Sanghvi alleged that Mrs. Rivers appeared to have decided for the entire City that the City Council should not know that the deductible was being paid using taxpayer money. Commissioner Sanghvi is fiduciarily responsible for reviewing and approving the proposed warrant before it is submitted to the City Council for approval. Had she reviewed the warrant she would have found the invoice in question and its attached documentation. If she had a concern, she and/or her staff were obligated to inform Mrs. Rivers of the concern and adjust the warrant as appropriate before it was uploaded to the agenda for approval.

66. Defendant Commissioner Montagnino accused Mrs. Rivers of a "reprehensible" action, "pulling a fast one," and hiding the Travelers deductible payment amongst payments for miscellaneous expenses including uniforms, auto parts, buckets, mops, brooms, and toilets.

67. These statements were false and Defendant Montagnino knew they were false when he made them.

10

68. Mayor Kim then asked for a "Discussion and Vote: Resolution – Risk & Safety" moving the Director of Risk and Safety to the Mayor's Office under the general supervision and administrative direction of the Mayor and Deputy Mayor effective August 22, 2022.

69. The move of Mrs. Rivers' position under the umbrella of the Mayor's office was made as a retaliatory measure, intended to take away Mrs. Rivers' independence and authority as the Director of Risk and Safety and place it within the Mayor's control and purview through his appointed City Attorney.

70. Mayor Kim's resolution passed with three (3) votes – Kim, Montagnino and Sanghvi.

71. Mrs. Rivers' constitutional and civil service job rights were continually violated by the public airing of malicious and false accusations that she pretended to be a lawyer in legal proceedings and engaged in questionable unknown management of insurance claims and litigation.

72. On August 3, 2022, Mrs. Rivers sent an email to Christy Spadaro, Human Resource Administrator, reaffirming and reiterating the continued hostile work environment perpetuated by Commissioner Minita Sanghvi, Commissioner James Montagnino and Mayor Ron Kim as exemplified in their false statements made at the August 2, 2022, City Council Meeting.

73. On August 6th, 2022, during a Special City Council Meeting, Defendant Mayor Ron Kim, Defendant Commissioner James Montagnino and Commissioner Dillon Moran continued their political infighting and false accusations against Mrs. Rivers regarding the Wales case settlement and the $25,000 insurance deductible payment.

74. Commissioner Dillon Moran accused City Council members of trying to "set up" Mrs. Rivers for termination.

75. Commissioner Moran further stated that Defendant Commissioner Montagnino

11

screamed at Deputy Commissioner Connors on three separate occasions on Friday, July 29, 2022, demanding Mrs. Rivers be fired in front of staff.

76. These threats, verbal attacks, and other hostile acts were motivated by discriminatory animus based on Mrs. Rivers sex and age to undermine her strength and independence as an accomplished female public servant.

77. At the August 6, 2022 meeting, Defendant Commissioner Montagnino further accused Mrs. Rivers of "tucking away" the deductible payment in question in the Consent Agenda.

78. At the time they made these false statements and accusations, Defendants Mayor Kim and Montagnino knew that the City's insurance policy was a "non-consent" policy, meaning that Travelers can decide to settle a case without the City's consent.

79. Indeed, in an on the record hearing before the Honorable Mae A. D'Agostino, United States District Court Judge for the Northern District of New York on August 11, 2022 in the Wales case, Mayor Ron Kim admitted that he understood the City's insurance policy through Travelers was a "non-consent" policy and, in so doing, laid bare that all of his prior public attacks against Plaintiff were false and, importantly, that he knew they were false when he made them.

80. Moreover, at the time they accused Mrs. Rivers of "hiding" a settlement payment and failing to apprise the City Attorney of the settlement status, Defendants Mayor Kim and Commissioner Montagnino knew that Mrs. Rivers had previously informed the City Attorney's office about the settlement via multiple emails to City Attorney Izzo, Christy Spadaro, Human Resource Administrator and City Labor Counsel Brian Kremer.

81. Defendants' public statements were made with malice and for the purpose of attempting to score cheap political points at the expense of a dedicated public servant and in retaliation for Mrs. Rivers' hostile work environment claim filed against Mayor Kim.

## AS AND FOR A FIRST CAUSE OF ACTION FOR DEFAMATION AGAINST DEFENDANTS KIM AND MONTAGNINO, PLAINTIFF ALLEGES AS FOLLOWS:

82. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 81 above.

83. That on numerous occasions between March 21 and August 30, 2022, Defendants did intentionally produce false statements purporting to be factual, which exposed Plaintiff to public ridicule, embarrassment, and more.

84. That Defendants negligently, recklessly, and intentionally with malice published and/or communicated the false statement to the general public and third parties without permission or authorization of the Plaintiff.

85. Specifically, Defendants accused Mrs. Rivers of unethical, illegal, criminal, and deceptive conduct at public City Council Meetings, in discussions with the City's insurance agent, and with many other members of the public.

86. That as a consequence of Defendants' false and malicious statements, Plaintiff has suffered harm to her reputation, standing in the community, and damage to her career and livelihood.

87. That Defendants' false statements and accusations of deceptive, unethical, and criminal conduct through allegedly acting as an attorney and attempting to hide a deductible payment from taxpayers, exposed Plaintiff to public contempt and ridicule and therefore constitute defamation *per se*.

88. As a consequence of Defendants acts, Plaintiff has suffered significant damages and reputational harm.

13

## AS AND FOR A SECOND CAUSE OF ACTION FOR STIGMA PLUS DUE PROCESS CLAIM under 42 U.S.C. § 1983 AGAINST DEFENDANTS KIM and MONTAGNINO, PLAINTIFF ALLEGES AS FOLLOWS:

89. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 88 above.

90. At all times relevant, Plaintiff was a public employee of the City of Saratoga Springs.

91. At all times relevant, Defendants Kim and Montagnino were acting in their capacity as public officials and state actors acting under color of law.

92. That Plaintiff at all relevant times possessed a liberty interest in her good and well-earned reputation, honor, and integrity.

93. That Defendants falsely charged Plaintiff with deceit, unethical and criminal misconduct, which charges placed a stigma on her reputation.

94. Defendants' statements are and can be proven false.

95. That the false charges were made public by the City's agents, Defendants Kim and Montagnino in public statements as set forth above.

96. That the false and defamatory statements were made in connection with Plaintiff's employment, her constructive discharge, and have caused her to lose job opportunities that would have otherwise been available to her.

97. By virtue of the foregoing, Defendants deprived Plaintiff of clearly established rights protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and Plaintiff sustained the damages herein alleged.

## AS AND FOR A THIRD CAUSE OF ACTION FOR NYSHRL DISCRIMINATION BASED ON SEX and AGE AND HOSTILE WORK ENVIRONMENT AGAINST ALL DEFENDANTS, PLAINTIFF ALLEGES AS FOLLOWS:

14

98. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 97 above.

99. At all times relevant herein, Plaintiff was an employee of Defendant City of Saratoga Springs within the meaning of the New York State Human Rights Law (N.Y. Exec. Law § 290).

100. At all times relevant herein, the City of Saratoga Springs is a covered employer pursuant to the NYSHRL.

101. By and through their course of conduct as alleged above, the individual Defendants, Kim and Montagnino, willfully violated the NYSHRL, by subjecting Plaintiff to a hostile work environment, discriminating against Plaintiff, and denying her equal terms and conditions of employment, harassing Plaintiff, and materially altering the terms and conditions of her employment because of her gender, sex, and age.

102. Plaintiff was subjected to harassment by City of Saratoga Springs and its agents and employees, including Defendants Kim, and Montagnino, because of Plaintiff's sex and age.

103. The City of Saratoga Springs' agents and employees' conduct was not welcomed by Plaintiff.

104. This conduct occurred due to the fact that Plaintiff was a member of a protected class. The conduct was so severe and pervasive that a reasonable person would consider the work environment to be hostile, and Plaintiff was subjected to this conduct by these Defendants and she was harmed as a result of this conduct.

105. Regardless of whether the conduct was severe or pervasive, the harassment rises above the level of petty slights or trivial inconveniences.

106. Plaintiff considered the work environment to be hostile as a result of City of

Saratoga Spring's agents and employees' conduct.

107. As a consequence of Defendants' discriminatory actions, Plaintiff has suffered damages including but not limited to severe emotional distress and economic damages.

### AS AND FOR A FOURTH CAUSE OF ACTION FOR RETALIATION UNDER THE NYSHRL AGAINST ALL DEFENDANTS, PLAINTIFF ALLEGES AS FOLLOWS:

108. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 107 above.

109. By their conduct described herein, Defendants retaliated against Plaintiff for engaging in protected activity, in violation of the New York State Human Rights Law, New York Executive Law §§ 290, et seq.

110. Plaintiff engaged in protected conduct when she filed an internal hostile work environment claim on or about May 24, 2022 and again on August 3, 2022 with human resources against defendant Mayor Ron Kim and the City.

111. As a result of her complaint, Defendants and Defendants' agents and employees took materially adverse actions against Plaintiff, including but not limited to, preventing Plaintiff from performing trainings for City Hall employees, removing responsibilities and autonomy from her position, and accusing Plaintiff of illegal, criminal, deceptive and unethical conduct, and publishing false claims about Plaintiff.

112. As a direct and proximate result of Defendants' conduct, Plaintiff has sustained and will continue to sustain economic injury in the form of pecuniary loss, irreparable damage to her reputation; psychological harm; present and future pain and suffering; mental anguish; anxiety; and loss of enjoyment of life.

### AS AND FOR A FIFTH CAUSE OF ACTION FOR CONSTRUCTIVE DISCHARGE UNDER NYSHRL AGAINST DEFENDANT CITY OF SARATOGA SPRINGS, PLAINTIFF ALLEGES AS FOLLOWS:

16

113. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 112 above as though the same were set forth in full herein.

114. Plaintiff was, at all times relevant herein, an employee of defendant City of Saratoga Springs.

115. Through the course of conduct as alleged above, Plaintiff was subjected to multiple acts of discrimination, a continuous hostile work environment, defamatory statements, and retaliation against her.

116. But for Defendants discriminatory conduct and failure to protect Plaintiff from same, she would have continued working at the City of Saratoga Springs rather than being forced to apply for early retirement.

117. Plaintiff was intentionally subjected to an objectively intolerable working environment that forced her to retire early involuntarily. Her premature retirement was a result of the culmination of a concerted effort on the part of Defendants to force her departure. Plaintiff, along with any reasonable person, would have found the aforementioned acts to be so intolerable that they would feel compelled to retire early and leave employment with the City.

118. As a direct and proximate result of the defendants' conduct, Plaintiff has sustained and will continue to sustain economic injury in the form of loss of wages, loss of benefits, retirement benefits, irreparable damage to her reputation, severe emotional distress, loss of consortium, physical and mental health problems, which all have caused permanent economic injury to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment and compensatory and punitive damages against the defendants in an amount which exceeds the jurisdictional limit of all lower courts, a name-clearing hearing, an order awarding reasonable attorney's fees together with the costs and

disbursements of this action, punitive damages, and for such other and further relief as the Court may deem just and proper.

Dated: May 8, 2023

          **CAPEZZA HILL, LLP**

By: _____
BENJAMIN W. HILL, ESQ.
Attorneys for Plaintiff
30 South Pearl St. P-110
Albany, NY 12207
(518) 478-6065
ben@capezzahill.com

18